UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.R.C.M.[1], | |
| Petitioner, | No. 1:25-cv-02071-TLN-JDP |
| v. | |
| Tonya Andrews, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on Petitioner A.R.C.M.'s ("Petitioner") Ex-Parte Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's Motion for TRO is GRANTED and Respondents are ordered to show cause why a preliminary injunction should not issue.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a citizen of Peru and an asylum applicant in the United States. (ECF No. 2 at 10.) In August 2022, Petitioner sought to enter the United States and was detained by immigration authorities. (*Id.*) Shortly thereafter, the U.S. Department of Homeland Security

---

[1]    Petitioner also filed a Motion to Proceed Via Pseudonym. (ECF No. 3.) After reviewing Petitioner's motion and finding good cause, the Court GRANTS Petitioner's motion.

1

1    ("DHS") determined Petitioner was not a danger to the community or a flight risk and released

2    him into the United States, under the Intensive Supervision Appearance Program ("ISAP"),

3    requiring Petitioner to comply with certain conditions of release.  (*Id*. at 8, 10.)  Petitioner asserts

4    that for nearly three years, he complied with all the conditions of his release.  (*Id*. at 8.)

5          Petitioner has never been arrested and has no criminal history.  (*Id*. at 10.)  This year,

6    Petitioner earned his High School Equivalency Certificate.  (ECF No. 2-6.)  He is also a primary

7    caretaker for his elderly parents.  (ECF No. 2-1 at 1.)

8          On May 25, 2025, Petitioner submitted a routine photo for ISAP reporting, in the same

9    manner as he always reported.  (ECF Nos. 2 at 10; 2-1 at 2.)  That same day, a U.S. Immigration

10    and Customs Enforcement ("ICE") officer contacted Petitioner and said there was an error with

11    the photo he submitted earlier and instructed him to report to the Stockton ICE office the next

12    day.  (ECF No. 2 at 10.)  On May 26, 2025, Petitioner duly reported to the ICE office where

13    Petitioner was arrested and handcuffed.  (*Id.* at 11.)  ICE officials told Petitioner he was being

14    detained because he had violated the conditions of his release, but they did not specify how.  (*Id.*)

15          While in detention at Golden State Detention Center, Petitioner reports overcrowding,

16    illness, lack of sleep, insufficient resources, unsanitary conditions, delay in medical care — *e.g*., a

17    two-month wait on a prescription for his autoimmune condition — and constant lockdowns,

18    including for COVID and scabies outbreaks.  (*Id.*; ECF No. 2-1 at 3.)  Petitioner has not received

19    any hearing relating to his custody, neither pre- nor post-detention.  (ECF No. 2 at 11.)

20          Petitioner's asylum application was denied on November 21, 2025, but he timely

21    appealed.  (ECF Nos. 2 at 8; 2-4; 2-5.)  His appeal is currently pending before the Board of

22    Immigration Appeals ("BIA").  (ECF No. 2 at 8.)  Petitioner faces the prospect of significant

23    additional time in detention while he awaits a decision on his appeal.  (ECF No. 2-2 at 4.)

24          Petitioner has been detained over seven months without a hearing.  (ECF No. 2 at 8.)

25    Petitioner now challenges the constitutionality of his civil detention and seeks release. (*See* ECF

26    Nos. 1, 2.)

27    ///

28    ///

2

1      ## II.    STANDARD OF LAW

2           For a TRO, courts consider whether a petitioner has established "[1] that he is likely to

3      succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

4      relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

5      interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a

6      showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

7      1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh

8      petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger

9      showing on the balance of the hardships may support issuing a TRO even where the petitioner

10     shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows

11     that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*

12     Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were

13     raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to

14     succeed in a request for a TRO.  *Id.* at 1134–35.

15     ## III.    ANALYSIS[2]

16          A.    <u>Likelihood of Success on the Merits</u>

17          Petitioner has established a likelihood of success on his claim that his detention violates

18     the Fifth Amendment Due Process Clause.[3]  The Fifth Amendment prohibits government

19     deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const.

20     amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause

21     applies to all "persons" within the borders of the United States, regardless of immigration status.

---

22     [2]    The Court finds Petitioner has met the requirements for issuing a temporary restraining

23     order without notice.  *See* Fed. R. Civ. P. 65(b).  Petitioner has filed the requisite affidavits and
       notified Respondents via email that he would be filing the motion and served copies of the

24     documents.  (*See* ECF No. 2-8.)  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC),
       2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were

25     met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal.

26     July 4, 2025) (same).

27     [3]    Petitioner alleges both substantive and procedural due process violations of the Fifth
       Amendment.  (*See* ECF No. 2.)  Because the Court finds a violation of procedural due process

28     sufficient to grant the requested relief, the Court need not address substantive due process.

1    *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration

2    proceedings and detention.  *Id.* at 693–94.

3         Courts examine procedural due process claims in two steps: the first asks whether there

4    exists a protected liberty interest under the Due Process Clause, and the second examines the

5    procedures necessary to ensure any deprivation of that protected liberty interest accords with the

6    Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

7    *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

8    the question remains what process is due.").

9                              *i.  Liberty Interest*

10        As for the first step, the Court finds Petitioner has established a protectable liberty

11   interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.

12   Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by

13   statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he

14   government's decision to release an individual from custody creates 'an implicit promise,' upon

15   which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to

16   the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,

17   2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a

18   noncitizen released from custody pending removal proceedings has a protected liberty interest in

19   remaining out of custody."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL

20   2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional

21   release rises to the level of a protected liberty interest, courts have "compar[ed] the specific

22   conditional release in the case before them with the liberty interest in parole as characterized by

23   *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.

24   Cal. Sept 9, 2025).

25        Here, Petitioner gained a liberty interest in his continued freedom after he was released

26   from custody in 2022.  Under *Morrisey*, this release implied a promise that he would not be re-

27   detained, during the pendency of his immigration proceedings, if he abided by the terms of his

28   release.  For three years, Petitioner complied with the conditions of his release, reporting to ICE

1  appointments, submitting ISAP photographs, and answering supervision calls.  (ECF Nos. 2 at 8;

2  2-1.)  Also in that time, Petitioner complied with all laws and has never been arrested for a crime.

3  (ECF No. 2-1 at 1.)  Moreover, for approximately three years, Petitioner built a life in the United

4  States.  (*Id.*)  He earned his High School Equivalency Certificate (ECF No. 2-6) and cared for his

5  elderly parents along with his sister (ECF No. 2-1 at 1).  As this Court has found previously,

6  along with many other courts in this district when confronted with similar circumstances,

7  Petitioner has a clear interest in his continued freedom.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d

8  1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in

9  the community for over five years strengthened petitioner's liberty interest).

10  Petitioner's liberty interest is not defeated because an Immigration Judge initially denied

11  his asylum application.  Petitioner timely appealed and is pursuing the process available to him.

12  Thus, he retains his liberty interest as he awaits a decision on his appeal.

13  *ii.  Procedures Required*

14  As to the second step — what procedures or process is due — the Court considers three

15  factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an

16  erroneous deprivation of such interest through the procedures used, and the probable value, if any,

17  of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

18  the function involved and the fiscal and administrative burdens that the additional or substitute

19  procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set

20  forth below, the Court finds Petitioner has established his due process rights were likely violated.

21  First, Petitioner has a substantial private interest in remaining free from detention.  As

22  discussed above, Petitioner was out of custody for approximately three years and had built a life

23  and community in California and cares for his elderly parents.  Despite that, Petitioner has now

24  been detained for over seven months without being afforded an opportunity to be heard, inflicting

25  hardship on him and his family.  Accordingly, this factor weighs in favor of finding Petitioner's

26  private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-

27  01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

28  Second, the risk of erroneous deprivation is considerable given Petitioner has not received

5

1   any hearing, either pre- or post-deprivation, nor did he receive notice of the reasons for his

2   detention.  Petitioner does not know why he was detained.  (*See generally* ECF Nos. 2; 2-1.)

3   Petitioner asserts that he complied with all conditions of his release and has never been arrested.

4   (ECF No. 2-1.)  Despite Petitioner's routine compliance — including submitting a photograph on

5   May 25, 2025, answering ICE's call on May 25, 2025, and reporting as requested to the ICE

6   office on May 26, 2025 — Petitioner was told by an ICE official that he was being detained for

7   violating his conditions.  (*Id.* at 2.)  Petitioner was not given an explanation, a notice, nor a

8   hearing at any time over the course of his seven-month detention.  (*See* ECF No. 2 at 11.)  Thus,

9   the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty

10  interest.  Without any procedural safeguards to determine whether his detention was justifiable,

11  the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at

12  *4.

13          Finally, the Government's interest is low, and the effort and cost required to provide

14  Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

15  TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Prior to an actionable final order

16  of removal, "[t]he government has no legitimate interest in detaining individuals who have been

17  determined not to be a danger to the community and whose appearance at future immigration

18  proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872

19  F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is

20  nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger

21  to the community.") (cleaned up).

22          At the time Respondents detained Petitioner, he did not have a final order of removal.

23  (*See* ECF No. 2-4.)  Additionally, DHS had determined in 2022 that Petitioner was not a danger

24  to the community nor a flight risk and, in the subsequent three years, Petitioner complied with all

25  laws and conditions of his release.  (ECF No. 2 at 10.)  Indeed, Petitioner's arrest is evidence of

26  his compliance: it resulted from his routine photo submission, answering ICE's call, and reporting

27  to an ICE appointment with less than 24-hour's notice.  (ECF No. 2-1 at 2.)  Therefore,

28  Respondents had no legitimate interest in detaining Petitioner when they arrested him on May 26,

1   2025.  Petitioner's order of removal six months into his detention does not alter this finding.

2   Respondents cannot cure their procedural due process violation by detaining Petitioner until their

3   interest ripens.  In any event, the order of removal is stayed pending the outcome of Petitioner's

4   appeal, thus, without a finding of danger or flight, Respondents still do not have a legitimate

5   interest in detaining Petitioner until the order is actionable.

6          Additionally, the cost and time of procedural safeguards are minimal here.  Notice and

7   custody determination hearings are routine processes for Respondents.  Any delay in detention (if

8   justified) for the time to provide notice and a hearing would be minimal.  Indeed, it would be less

9   of a fiscal and administrative burden for the Government to return Petitioner home to await a

10  determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*,

11  No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit

12  has recognized that the costs to the public of immigration detention are staggering.").

13         Petitioner argues that Respondents are required to provide notice and a pre-deprivation

14  hearing.  (ECF No. 2 at 20–21.)  This Court agrees.  The United States Supreme Court "usually

15  has held that the Constitution requires some kind of a hearing *before* the State deprives a person

16  of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The

17  Court describes post-deprivation remedies as the "special case" where those are "the only

18  remedies the State could be expected to provide."  *Id.* at 129.  Here — where Petitioner has

19  substantially complied with the conditions of his release, has been determined not to be a flight

20  risk or a danger, has never been arrested, and removal is not reasonably foreseeable — the Court

21  finds pre-deprivation notice and hearing are routine, possible, and valuable to preventing

22  erroneous deprivation of liberty.

23         On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to

24  pre-deprivation notice and hearing to determine whether detention was warranted.  Respondents

25  did not provide either.  Nor did they provide any post-deprivation process.  Accordingly, with

26  respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the

27  merits.

28  ///

7

B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained for over seven months. While in detention he is unable to care for his elderly parents, his autoimmune condition is exacerbated, and he is suffering from emotional distress. (ECF No. 2-1 at 3.) Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm to him and his family, while he awaits a decision on his appeal. (*See* ECF No. 2-2 at 4.) Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has established irreparable harm.

C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). Any burden imposed by requiring Respondents to release Petitioner from unlawful custody and refrain from re-detention unless and until they comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial

8

harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention on May 26, 2025. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1.  Petitioner's Ex-Parte Motion for Temporary Restraining Order (ECF No. 2) is GRANTED.

2.  Respondents must IMMEDIATELY RELEASE Petitioner A.R.C.M. from custody. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3.  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents show: (a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

4.  Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this Order.  Respondents shall file responsive papers by **January 7, 2026**.  Petitioner may file a reply, if any, by **January 12, 2026**.  **The parties shall indicate in their briefing whether they waive a hearing**. Fed. R. Civ. P. 65(b)(3). The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

5.  Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents by emailing: usacae.ecf2241-imm@usdoj.gov.

6.  Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4).

7.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: December 31, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

10