UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.R.C.M.,<br><br>    Petitioner,<br><br>    v.<br><br>TONYA ANDREWS, et al.,<br><br>    Respondents. | No. 1:25-cv-02071-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on an order to show cause why a preliminary injunction should not issue (ECF No. 6) after granting Petitioner A.R.C.M.'s ("Petitioner") underlying Motion for Temporary Restraining Order ("TRO") (ECF No. 2). Respondents filed an opposition and waived hearing. (ECF No. 9.) Petitioner replied and did not request a hearing. (ECF No. 10.) For the reasons set forth below, the Court issues a preliminary injunction.

///

///

///

1

### I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

Petitioner is a citizen of Peru and an asylum applicant in the United States. (ECF No. 2 at 10.) In August 2022, Petitioner sought to enter the United States and was detained by immigration authorities. (*Id.*) Shortly thereafter, the U.S. Department of Homeland Security ("DHS") determined Petitioner was not a danger to the community or a flight risk and released him into the United States, under the Intensive Supervision Appearance Program ("ISAP"), requiring Petitioner to comply with certain conditions of release. (*Id.* at 8, 10.) Petitioner asserts that for nearly three years, he complied with all the conditions of his release. (*Id.* at 8.)

Petitioner has never been arrested and has no criminal history. (*Id.* at 10.) This year, Petitioner earned his High School Equivalency Certificate. (ECF No. 2-6.) He is also a primary caretaker for his elderly parents. (ECF No. 2-1 at 1.)

On May 25, 2025, Petitioner submitted a routine photo for ISAP reporting, in the same manner as he always reported. (ECF Nos. 2 at 10; 2-1 at 2.) That same day, a U.S. Immigration and Customs Enforcement ("ICE") officer contacted Petitioner and said there was an error with the photo he submitted earlier and instructed him to report to the Stockton ICE office the next day. (ECF No. 2 at 10.) On May 26, 2025, Petitioner duly reported to the ICE office where Petitioner was arrested and handcuffed. (*Id.* at 11.) ICE officials told Petitioner he was being detained because he had violated the conditions of his release, but they did not specify how. (*Id.*)

While in detention at Golden State Detention Center, Petitioner reported overcrowding, illness, lack of sleep, insufficient resources, unsanitary conditions, delay in medical care — *e.g.*, a two-month wait on a prescription for his autoimmune condition — and constant lockdowns, including for COVID and scabies outbreaks. (*Id.*; ECF No. 2-1 at 3.) Petitioner had not received any hearing relating to his custody, neither pre- nor post-detention. (ECF No. 2 at 11.)

Petitioner's asylum application was denied on November 21, 2025, but he timely appealed. (*Id.* at 8; ECF No. 2-4; ECF No. 2-5.) His appeal is currently pending before the Board of Immigration Appeals ("BIA"). (ECF No. 2 at 8.) Petitioner faced the prospect of

---

[1]     The facts are renewed from the Court's Temporary Restraining Order (ECF No. 6); the Parties do not dispute these facts. (*See* ECF Nos. 9, 10.)

1  significant additional time in detention pending the decision on his appeal.  (ECF No. 2-2 at 4.)
2  Petitioner had already been detained over seven months without a hearing.  (ECF No. 2 at 8.)
3        Petitioner challenged the constitutionality of his arrest and detention.  (ECF No. 1.)  On
4  December 31, 2025, this Court ordered Petitioner's immediate release and further enjoined and
5  restrained Respondents from re-arresting or re-detaining Petitioner absent compliance with
6  constitutional due process.  (ECF No. 6.)  The Court now determines whether the relief provided
7  in the TRO should continue as a preliminary injunction.

8      **II.**    **STANDARD OF LAW**

9        For a preliminary injunction, courts consider whether a petitioner has established: "[1] that
10 he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence
11 of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is
12 in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner
13 must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v.*
14 *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).
15       In evaluating a petitioner's motion, a district court may weigh petitioner's showings on
16 the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the
17 hardships may support issuing a preliminary injunction even where the petitioner shows that there
18 are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a
19 likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a
20 petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the
21 balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary
22 injunction.  *Id.* at 1134–35.

23     **III.**    **ANALYSIS**

24       This Court already found Petitioner established a likelihood of success on each of the
25 *Winter* elements sufficient to warrant relief as set forth in the TRO.  (ECF No. 6.)  Because the
26 standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary
27 injunction, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.
28 2001), the Court incorporates its reasoning from the TRO and need not duplicate its analysis here.

3

In response to the order to show cause, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) ("§ 1225(b)(1)") without a right to a bond hearing.[2]  (ECF No. 9 at 2 n.2.)  Petitioner responds § 1226(a) governs his custody determination and procedures, but regardless of which statute applies, the core issue is constitutional and he is entitled to due process.  (*See generally id.*)  Finally, Respondents ask that further briefing in this case be held in abeyance until the resolution of a Ninth Circuit appeal which may bear on this case.  *See Rodriguez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025).  The Court addresses each argument in turn.

### A.  Statutory Due Process: § 1225(b)(1) v. § 1226(a)

This Court has repeatedly found that § 1225(b)(1) applies only to "applicants for admission" — a category that does not include noncitizens like Petitioner who have already entered the United States and are residing here at the time ICE detains them.  *See V.S. v. Albarran*, No. 1:26-CV-00087-TLN-AC (E.D. Cal. Jan. 12, 2026); *Marcos B.D.S. v. Warden of Mesa Verde Det. Facility*, No. 1:25-CV-02032-TLN-CSK, 2026 WL 82344, at *3 (E.D. Cal. Jan. 12, 2026).  This Court has made its position on this statutory question clear.  *Id.*  Absent new argument, case law, or distinguishable facts, this Court will not reconsider its position.

Thus, the Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b)(1).  Rather, Petitioner is subject to § 1226(a) and statutorily entitled to the processes conferred by that provision.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Respondents did not comply with those requirements.  Therefore, as set out in the TRO, Petitioner is likely to succeed on the merits of his claim that Respondents violated the INA and improperly subjected him to mandatory detention without due process.

### B.  Constitutional Due Process

As Petitioner points out, even if Respondents were correct in their statutory interpretation, Petitioner is still entitled to constitutionally compliant due process when the Government revokes a conferred liberty interest.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process

---

[2]  Respondents do not challenge Petitioner's arguments as to the *Winter* factors for irreparable harm, balance of equities, and public interest.

4

1  Clause applies to all 'persons' within the United States, including noncitizens, whether their
2  presence here is lawful, unlawful, temporary, or permanent."). Due process rights extend to
3  immigration proceedings and certainly to detention. *Id.* at 693–94; *Hernandez v. Sessions*, 872
4  F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to [detain] non-citizens is always
5  constrained by the requirements of due process.").

6  As set out in this Court's TRO, the *Matthews v. Eldridge* factors demonstrated that
7  Petitioner was entitled to notice and a pre-deprivation hearing. 424 U.S. 319 (1976). Petitioner
8  was not provided that baseline protection or any post-deprivation hearing during over seven
9  months of detention.

10  Our immigration laws have long made a distinction between due process owed to
11  noncitizens who have been living in the United States and those who seek constitutional
12  protections at our border. *See Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015) (quoting *Leng*
13  *May Ma v. Barber*, 357 U.S. 185, 187 (1958)); *see also Shaughnessy v. United States ex rel.*
14  *Mezei*, 345 U.S. 206, 212 (1953) (noncitizens "who have once passed through our gates, even
15  illegally, are afforded the full panoply of procedural due process protections, and may be expelled
16  only after proceedings conforming to traditional standards of fairness.") (cleaned up); *Zadvydas*,
17  533 U.S. at 693 ("It is well established that certain constitutional protections available to persons
18  inside the United States are unavailable to aliens outside of our geographic borders. . . . But once
19  an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to
20  all 'persons' within the United States, including aliens, whether their presence here is lawful,
21  unlawful, temporary, or permanent.").

22  Here, Petitioner has been living in the United States for over three years, taking care of his
23  family, participating in his community, earning an education, and complying with all conditions
24  of his immigration release. Thus, Petitioner is entitled to "the full panoply" of due process in his
25  detention and immigration proceedings and he must be afforded adequate and fair procedures
26  when deprived of his liberty. *Shaughnessy,* 345 U.S. at 212. As discussed in the TRO,
27  Respondents did not supply adequate or fair procedural protections.

28  Moreover, Respondents must have a legitimate justification for detaining Petitioner, even

1  when they have broad discretion in detention decisions. *See Hernandez*, 872 F.3d at 981 (finding
2  "[immigration] detention incidental to removal must bear a reasonable relation to its purpose.").
3  "The government has no legitimate interest in detaining individuals who have been determined
4  not to be a danger to the community and whose appearance at future immigration proceedings can
5  be reasonably ensured by [ ] bond or alternative conditions." *Id.* at 994. Respondents have
6  provided no such justification. Petitioner's immigration proceedings have not concluded and
7  there is no actionable final order of removal. Additionally, Petitioner is not a flight risk nor a
8  danger to the community. DHS made this finding in 2022, and Respondents do not point to any
9  new facts that would alter this finding. Meanwhile, it is uncontested that Petitioner complied with
10 the conditions of his release, has never been arrested, and has no criminal history. Accordingly,
11 the Court cannot find a legitimate reason for Respondents to detain Petitioner.

12       C.   <u>Request for Holding in Abeyance</u>

13       Finally, Respondents request the Court hold further briefing in this case in abeyance
14 pending the Ninth Circuit's decision on the appeal of *Rodriguez Vazquez v. Bostock*, 779
15 F.Supp.3d 1239 (W.D. Wash. 2025). (ECF No. 9 at 2.) Petitioner objects to the request arguing
16 that undue delays are not authorized by the habeas statute, delay of this matter is inefficient, and
17 this case may be decided on independent bases. (ECF No. 10 at 5–7.)

18       The Court denies Respondents' request to hold this case in abeyance. As discussed in this
19 Court's prior Order and reincorporated here, the Court finds Petitioner is likely to succeed on the
20 merits of his claims and the Court will not delay issuing relief on the prospective chance a
21 pending appeal could change the outcome of one claim in the case.

22       To prevent further irreparable harm, the Court issues a preliminary injunction as set forth
23 below.

24       **IV.   CONCLUSION**

25       Accordingly, IT IS HEREBY ORDERED:

26    1. Respondents are ENJOINED and RESTRAINED from imposing any additional
27       restrictions on Petitioner's terms of release, unless such restrictions are determined to be
28       necessary at a future pre-deprivation/custody hearing.

2. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

3. This matter is referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: January 15, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE